UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBYN M. G.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. 3:26-CV-5061-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of Defendant's denial of her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").[1] The Court concludes that the Administrative Law Judge ("ALJ") erred in evaluating Plaintiff's subjective symptom testimony. Had the ALJ properly considered this evidence, the residual functional capacity ("RFC") may have included additional limitations, or the ultimate determination of disability may have changed. The ALJ's error, therefore, is not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. §

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

405(g), to the Commissioner of the Social Security Administration for further proceedings consistent with this order.

## I. Procedural History

On June 14, 2022, Plaintiff protectively filed an application for DIB and SSI pursuant to 42 U.S.C. § 423 (Title II) and 42 U.S.C. § 1382(a) respectively, alleging disability as of January 23, 2019. Administrative Record ("AR") 73. Plaintiff's claim was denied initially on October 7, 2022, and upon reconsideration on December 20, 2022. *Id.* Plaintiff requested a hearing on February 15, 2023. *Id.*

The matter came on for a hearing before ALJ Vadim Mozyrsky on February 2, 2024. AR 3-29. On May 3, 2024, the ALJ issued a decision and found that Plaintiff was not disabled and did not qualify for DIB and SSI. AR 19.

The Social Security Appeals Council denied review on November 18, 2025, making the Commissioner's decision subject to judicial review. AR 1. Plaintiff then filed a Complaint in the United States District Court for the Western District of Washington on January 28, 2026. Dkt. 5.

## II. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [they] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

## III. Discussion

Plaintiff argues that the ALJ failed to properly evaluate the opinions of several medical providers,[2] her subjective symptom testimony, and lay witness evidence. Dkt. 13 at 2, 9, 14. Plaintiff also argues that the ALJ improperly determined her RFC. *Id.* at 15.

A. Subjective Symptom Testimony

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison*, 759 F.3d at 1014. At the first step, the ALJ determines whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* This evidence need not validate the severity of the alleged symptoms; rather, "the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021).

If the claimant satisfies this first step and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1112 (quoting *Garrison*, 759 F.3d at 1014-15). An ALJ may not reject the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346–47 (9th Cir. 1991). "Although an ALJ may use '*inconsistent* objective medical evidence in the record to discount subjective symptom testimony,' the ALJ 'cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective

[2] Specifically, Plaintiff argues that the ALJ failed to properly evaluate the opinions of Wendy Hartinger, Psy D, Melissa Rudd, FNP, Carrie Hickman, PhD, Anita Sassaman, ARNP, Yan Li He, DO, and Derek Leinenbach, MD. Dkt. 13 at 2-8.

testimony.'" *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (quoting *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022)).

"This standard is 'the most demanding required in Social Security cases.'" *Smith*, 14 F.4th at 1112 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). To meet this standard, ALJs must "identify which testimony [they] found not credible and why." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). "The standard isn't whether [a] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499. As with all findings by the ALJ, the specific, clear, and convincing reasons provided must also be supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g).

*i. Plaintiff's Subjective Symptom Testimony*

At Plaintiff's disability hearing, Plaintiff testified she had pain in her joints, lower back, hips, shoulders, and neck. AR 12. Plaintiff also reported she struggled with depression and anxiety. AR 13, 16-22, 343. Plaintiff took several medications to address her symptoms. AR 13. Adderall helped with Plaintiff's ability to focus on a task, but her mood stabilizer and depression medications did not do anything. AR 13-14, 18-19.

When Plaintiff left the house, she would "rarely drive [her]self." AR 9. And, when Plaintiff did leave the house, she could be gone only for approximately an hour and a half before her symptoms would flare up. AR 22.

On a typical day, Plaintiff would take care of her kids, go to an appointment, and "do a little bit of housework." AR 10. Plaintiff's appointments mostly occurred over the phone, and she would sometimes forget about upcoming appointments. *Id.* Plaintiff would meet with her

therapist once a week and she would meet with a medical provider "roughly every three weeks." AR 11.

The housework consisted of wiping the counters, picking up toys in the living room, or doing dishes. AR 11. Plaintiff's significant other took care of other chores like vacuuming, sweeping, and laundry because it hurt too much to do those activities. AR 11-12. Plaintiff said that she would spend "3 to 4 hours" doing housework. AR 345.

With respect to taking care of her kids, Plaintiff would "feed them, make sure they change[d] their clothes on a daily basis, and play[ed] with them." AR 15. Plaintiff would spend "10 to 20 minutes" preparing meals. AR 345. Plaintiff would cook meals "[a]nd other times, [she would] either have [her significant other] do it, or [she would] microwave something." AR 15.

On bad days, Plaintiff explained she could not get out of bed and relied on her significant other to take care of things because she could not do anything. AR 20-21. Plaintiff would even need to be reminded to eat or shower at times. AR 20, 393. Indeed, Plaintiff's significant other confirmed that he would need "to address essential tasks such as household chores and attending to the needs of [their] children" when Plaintiff was experiencing "intensified pain or heightened depressive states." AR 393. Plaintiff estimated that she would have more than a week of bad days in a typical month. AR 21.

*ii. The ALJ's Decision*

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce some of the symptoms alleged. AR 79. The ALJ did not, however, find that Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms were fully consistent with the evidence in the record. AR 79-80. The ALJ ultimately concluded

that Plaintiff had the RFC to perform a full range of work at all exertional levels so long as she was limited to performing only simple tasks that required no more than 3 steps. AR 78.

The Court finds the ALJ rejected Plaintiff's subjective symptom testimony for four reasons. First, the ALJ evaluated Plaintiff's activities of daily living. AR 79. The ALJ determined that Plaintiff actively cared for her three children and took them on trips and went to events despite her allegations that she could barely get out of bed much of the time. *Id*. To support the ALJ's finding, he cited to Plaintiff's function report from July 7, 2022, where Plaintiff explained she cared for her children by cooking, cleaning, and taking them to doctor appointments. *Id.* (citing AR 343-50). Next, the ALJ cited a progress note from a counseling appointment on July 19, 2022, where Plaintiff reported she had gone camping with her family the previous weekend. AR 80 (citing AR 1306). Then, the ALJ cited another progress note from a counseling appointment on January 17, 2023, where Plaintiff explained she had taken her children roller skating and they were planning to go once a week. AR 80 (citing AR 1415).[3]

Second, the ALJ found that the medical evidence showed limited mental health treatment as of January 2019, the alleged onset date. AR 79.

Third, the ALJ found Plaintiff's symptoms ebbed and flowed over the course of her receiving treatment. *Id*. To support this finding, the ALJ cited several progress notes detailing Plaintiff's symptoms as she progressed through therapy. *Id.* (citing AR 706-16, 785-801, 1211-17, 1240, 1275). For example, in a progress note from April 23, 2021, Plaintiff reported that her depression was "a tiny bit better." AR 796. And, in another progress note from October 22, 2021,

[3] There is no evidence in the record supporting that Plaintiff went roller skating with her children on a weekly basis.

Plaintiff reported that she started school, and she was taking one class. AR 785.[4] But Plaintiff also reported that her depression "was not doing well." *Id.*

Fourth, the ALJ found that Plaintiff's mood and ability to complete tasks improved with Adderall. AR 80. To support this finding, the ALJ cited a progress note from June 27, 2022, where Plaintiff reported that she had an improvement in mood and task completion after being on Adderall for one month. *Id.* (citing AR 1312). Then, the ALJ cited another progress note from August 30, 2022, where Plaintiff reported that Adderall helped her stay focused, but she also said that her mood stabilizers were not really working. AR 80 (citing AR 1433).

The ALJ erred by failing to properly evaluate Plaintiff's subjective symptom testimony.

a. Activities of Daily Living

It has long been "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *See*, *e.g.*, *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). An ALJ may, however, "consider daily living activities in his credibility analysis … if a claimant engages in numerous daily activities involving skills that could be transferrable to the workplace." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But "'[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons …, and is not held to a minimum standard of performance, as she would be by an employer.'" *Garrison*, 759 F.3d at 1016 (quoting *Bjornson v. Astrue*, 641 F.3d 640, 647 (7th Cir. 2012)). A claimant need not "vegetate in a dark room" to qualify for disability. *Ferguson*, 95 F.4th at 1203 (quoting *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987)).

---

[4] Plaintiff later testified that she "dropped out within a month because … of [her] depression and pain." AR 16.

Here, Plaintiff's activities of daily living are limited and not inconsistent with Plaintiff's subjective complaints. Plaintiff reported that on a good day, she was able to take care of her kids, clean, and go to appointments. AR 10. But on a bad day, Plaintiff testified that she could not get out of bed and relied on her significant other to do everything, even needing reminders to shower and eat at times. AR 20-21. Plaintiff reported that on average, she would have more than a week of bad days in a month. AR 21; *contra Burch*, 400 F.3d at 678-81 (explaining that the ALJ properly discounted claimant's subjective symptom testimony because her activities of daily living demonstrated that she was "able to care for her own personal needs, cook, clean and shop" on a regular basis).

Substantial evidence does not support finding Plaintiff engaged in activities of daily living for more than a few hours per day on a good day. AR 345. Even when considering Plaintiff's family camping trip around July 2022 and going roller skating with her kids in January 2023, these are two instances in a *several* year period and are not inconsistent with Plaintiff's reports of good and bad days. AR 1306, 1415. Moreover, Plaintiff later testified she could only be away from the house approximately an hour and a half before her symptoms would flare. AR 22. The ALJ has failed to explain how Plaintiff's testimony was inconsistent with her ability to care for her children on a good day, engage in infrequent outings with her children, and her inability to do so on a bad day. *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (explaining that an ALJ must "build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

Therefore, the ALJ has not shown Plaintiff's activities of daily living are inconsistent with her testimony of disabling impairments.

b. Plaintiff's Limited Mental Health Treatment

When a person suffers from a mental illness, they may not have the requisite insight into his or her condition to seek or comply with treatment. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989). This is so because a person suffering from a mental illness may not realize that they need treatment, or they may not even realize that their "condition reflects a potentially serious mental illness." *Nguyen*, 100 F.3d at 1465. Consequently, "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Id.* (quoting *Blankenship*, 874 F.2d at 1124).

Here, the ALJ improperly rejected Plaintiff's testimony on the basis she had limited mental health treatment prior to 2019. *See Nguyen*, 100 F.3d at 1465. The ALJ has also failed to explain how Plaintiff failing to seek treatment for her mental condition as of 2019 conflicts with her testimony. *Blakes*, 331 F.3d at 569. Plaintiff reported that she "had issues with her depression [her] whole life." AR 1211. Plaintiff testified she attended therapy once a week, AR 11, and the record illustrates she participated in therapy sessions and evaluations between 2021 and 2024. AR 706-16, 1211-1343, 1536-45, 1606-51.

Therefore, the ALJ has not shown Plaintiff's limited mental health treatment as of 2019 is inconsistent with her testimony of disabling impairments.

c. Plaintiff's Symptoms

After citing several progress notes detailing Plaintiff's symptoms as she progressed through therapy, the ALJ found Plaintiff's symptoms not credible because they ebbed and flowed over the course of her receiving treatment. AR 79. It is not uncommon for "symptoms to wax

and wane in the course of treatment." *See Garrison*, 759 F.3d at 1017. As such, an ALJ errs when he rejects a claimant's testimony on this basis. *Id.*

The ALJ erred in rejecting Plaintiff's testimony on the basis that her symptoms fluctuated over the course of treatment. *See id.* The record shows Plaintiff's depression improved at times. *See, e.g.*, AR 785-96. Plaintiff acknowledged she would have good and bad days, and on average, she would have more than a week of bad days during a month. AR 9-25, 785-96. This is consistent with the "[c]ycles of improvement and debilitating symptoms" common with mental health issues. *Garrison*, 759 F.3d at 1017. The ALJ also failed to explain how the fluctuation of Plaintiff's symptoms and her having good and bad days was inconsistent with her testimony. *Blakes*, 331 F.3d at 569.

Therefore, the ALJ has not shown Plaintiff's fluctuation of symptoms is inconsistent with her testimony of disabling impairments.

d. Plaintiff's Use of Adderall

Assuming without deciding whether the record supports the finding that Adderall helped Plaintiff, the ALJ has failed to explain how this was inconsistent with Plaintiff's testimony relating to her depression. *See id.*; AR 81, 720. There are several instances in the record where Plaintiff reported that her medications were not adequately addressing her symptoms. *E.g.*, AR 13, 1338, 1433, 1461. In one progress note from March 31, 2021, Plaintiff reported that her mood stabilizers were not working. AR 1433. And Plaintiff similarly testified at her disability hearing that she did not feel "any difference" with her mental health, even after her doctor had upped the dosage of her medication. AR 13.

Therefore, the ALJ has not shown Plaintiff's response to taking Adderall is inconsistent with her testimony of disabling impairments.

Accordingly, the ALJ's finding that Plaintiff's testimony about the severity of her symptoms was inconsistent with the objective evidence in the record did not constitute a sufficiently specific, clear, and convincing reason supported by substantial evidence. Therefore, the ALJ erred in assessing Plaintiff's subjective symptom testimony.

*iii. Harmless Error*

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

Applying the harmless error analysis, the Court concludes that the ALJ committed harmful error in failing to adequately evaluate Plaintiff's subjective symptom testimony. Had the ALJ properly considered this evidence, Plaintiff's RFC may have included additional limitations, or the ultimate determination of disability may have changed. The ALJ's error, therefore, is not harmless, and the proper disposition is to reverse and remand the matter for additional proceedings. *See Stout*, 454 F.3d at 1055; *see also Molina*, 674 F.3d at 1115.

B. Remaining Issues

In light of this disposition, the Court need not address Plaintiff's remaining arguments regarding medical opinion evidence, lay witness testimony, or the RFC determination.[5] On

[5] The Court notes that the ALJ relied, in part, on similar justifications to reject the opinions of Dr. Hartinger, Ms. Rudd, Dr. Hickman, and Ms. Sassaman as it did to discount Plaintiff's testimony. AR 78-83 Consequently, the ALJ erred in rejecting those opinions on the bases discussed in this order. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (explaining that "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

The ALJ also rejected Plaintiff's significant other's testimony for the same reasons. AR 84. Because of this, the ALJ similarly erred. *See Fain v. Bisignano*, ___ F.4th ___, *6 (9th Cir. 2026) (explaining that an ALJ must evaluate and "set forth some reasoning for rejecting competent [lay] testimony.").

remand, the ALJ is instructed to reconsider the entire Social Security sequential evaluation process, and, if necessary, Plaintiff's RFC. *See* Social Security Ruling 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective."); *Watson v. Astrue*, No. ED-CV-09-1447-PLA, 2010 WL 4269545, at *5 (C.D. Cal. Oct. 22, 2010) (concluding the RFC and hypothetical questions posed to the vocational expert at Step Five were defective when the ALJ did not properly consider physicians' findings).

## IV. Conclusion

Based on the foregoing reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 23rd day of September, 2026.

David W. Christel
United States Magistrate Judge

---

Because the Court has concluded that the ALJ erred in rejecting Plaintiff's subjective symptom testimony, and the error was not harmless, it need not evaluate whether these additional errors regarding medical opinion evidence and lay witness testimony were harmless.